UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIO PETROLINO, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 16-cv-02946-RS<br><br>**ORDER GRANTING IN PART AND DEYING IN PART DEFENDANT OFFICER MITCHELL'S MOTION TO DISMISS** |

## I. INTRODUCTION

California Highway Patrol Officer Daniel Mitchell moves to dismiss claims brought against him by the surviving family members of Alberto Petrolino ("plaintiffs"), who committed suicide in jail three days after being arrested by Mitchell. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for October 28, 2016, is vacated. Although Mitchell is protected from plaintiffs' federal claims by qualified immunity, plaintiffs have pled adequately a state-law wrongful-death claim against Mitchell. Thus, Mitchell's motion is granted in part and denied in part.

## II. BACKGROUND[1]

On July 25, 2015, Petrolino's ex-girlfriend Debra called 911 and reported that Petrolino had threatened to kill himself on the Golden Gate Bridge, and that she feared he was going to jump off the bridge. Mitchell responded to the call, and found Petrolino intoxicated near the bridge. Mitchell then called Debra, who repeated her fear that Petrolino would commit suicide.

---

[1] All factual allegations are drawn from plaintiffs' amended complaint and taken as true for the purpose of deciding this motion. *See infra* Part III.

Mitchell next called Petrolino's sister Angela, and left her a voicemail explaining Petrolino had been detained at the bridge after threatening to kill himself. Angela called Mitchell back, and informed him that Petrolino had attempted suicide before. She requested that Petrolino be taken to a hospital because she believed he was a danger to himself.

Mitchell discovered Petrolino had two outstanding misdemeanor bench warrants from 2015, and placed him under arrest. Mitchell did not take Petrolino to a hospital, as Angela suggested, but instead took him to San Francisco County Jail No. 1 for booking. At the jail, Eve Zeff, "a Jail Health Services Registered Nurse, was conducting the medical triage to determine whether arriving arrestees' medical or mental health problems necessitated being sent to S.F. General Hospital for evaluation by medical and/or mental health professionals before being accepted into custody by the County Jail." Am. Compl. ¶ 44. Zeff conducted a medical triage of Petrolino, and Mitchell told her "the circumstances of [Petrolino's] arrest, including that he had been found intoxicated at the Golden Gate Bridge after telling his ex-girlfriend that he was going to kill himself there." *Id.* Rather than send him to the hospital, Zeff accepted Petrolino into the jail. Three days later, on July 28, 2015, Petrolino committed suicide while in custody.

As a result of Petrolino's suicide, plaintiffs commenced this suit, bringing a variety of claims against multiple defendant parties. Relevant to this motion, plaintiffs bring four claims against defendant Mitchell for his choice to take Petrolino to jail rather than to a hospital.[2] Plaintiffs bring three claims under 42 U.S.C. § 1983: cruel and unusual punishment in violation of the Fourteenth Amendment; loss of freedom of association in violation of the First and Fourteenth Amendments; and loss of parent-child relationship in violation of the substantive Due Process Clause of the Fourteenth Amendment. Plaintiffs also bring a state law wrongful death claim under California Code of Civil Procedure section 377.60. Mitchell now moves to dismiss plaintiffs' claims, arguing qualified immunity shields him from their § 1983 claims, and that plaintiffs have

---

[2] Plaintiffs' amended complaint also brings a state law claim against Mitchell for failure to furnish/summon medical care under California Government Code section 845.6. In response to Mitchell's motion, plaintiffs concede this claim cannot be maintained against Mitchell.

failed to state a wrongful death claim.

### III.  LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required," but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

### IV.  DISCUSSION

#### A.  Federal § 1983 Claims

Mitchell argues all three of plaintiffs' § 1983 claims fail because he is protected by qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerlad*, 457 U.S. 880, 818 (1982). *See also*, *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (qualified immunity is "an immunity from suit rather than a mere defense to liability"). In *Saucier v. Katz*, the Supreme Court established a sequential two-step approach for resolving government officials' qualified immunity claims, whereby a court must decide: (1) whether, viewing the facts in the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OFFICER MITCHELL'S MOTION TO DISMISS
CASE NO. 16-cv-02946-RS
3

light most favorable to plaintiff, the government actors violated plaintiff's constitutional rights; and (2) whether these constitutional rights were clearly established at the time of the violation. 533 U.S. 194, 201 (2001). In *Pearson v. Callahan*, the Court reconsidered this sequential two-step process, and held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

With regards to the second prong of the inquiry, "clearly established law [is not to be defined] at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). In deciding whether a constitutional right was clearly established at the time of the alleged violation, a court must ask "whether the violative nature of *particular conduct* is clearly established." *Id.* (emphasis added). "This inquiry, it is vital to note, must be undertaken in light of the *specific context* of the case, not as a broad general proposition . . . ." *Saucier*, 533 U.S. at 201 (emphasis added). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

The parties agree plaintiffs' § 1983 claims all allege "deliberate indifference." *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010) (citations omitted) ("We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a 'deliberate indifference' standard."), *overruled on other grounds by Castro v. Cty. of Los Angeles*, No. 12-56829, 2016 WL 4268955 (9th Cir. Aug. 15, 2016) (en banc). There are two separate deliberate indifference standards: *subjective*, which asks whether the defendant consciously disregarded an "excessive risk" and *objective*, which asks whether the defendant recklessly disregarded that risk. *See Castro*, 2016 WL 4268955 at *7, *7 n.4. It is not clear in this case, however, whether the subjective or objective standard of deliberate indifference should

apply. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) (applying an objective standard to the question of whether an officer committed excessive force against a pretrial detainee); *Castro*, 2016 WL 4268955, at *6 ("*Kingsley*'s holding . . . does not necessarily answer the broader question whether the objective standard applies to all § 1983 claims brought under the Fourteenth Amendment against individual defendants."); *Clouthier*, 591 F.3d at 1243 (citations omitted) (applying the subjective deliberate indifference standard in the context of a jail suicide).  For the purpose of deciding this motion, it is not necessary to choose which standard applies, because Mitchell is entitled to qualified immunity even under the more plaintiff-friendly objective standard.  *See Castro*, 2016 WL 4268955 at *7 ("Thus, the test to be applied under *Kingsley* must require a pretrial detainee who asserts a due process claim for failure to protect to prove more than negligence but less than subjective intent — something akin to reckless disregard.")

Plaintiffs sufficiently show the existence of a detainee's general Fourteenth Amendment right to be free from deliberate indifference.  *See Clouthier*, 591 F.3d at 1244-45 (denying qualified immunity for a Fourteenth Amendment claim premised on alleged deliberate indifference to a detainee's heightened risk of suicide); *Conn v. City of Reno*, 591 F.3d 1081, 1090 (9th Cir. 2010) (denying summary judgement and qualified immunity to officers who witnessed an arrestee attempt suicide but "failed to report the incident to jail personnel or take [the arrestee] to a hospital"), *cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *op'n reinstate in relevant part*, 658 F.3d 897 (9th Cir. 2011).  They fail, however, to establish the existence of a detainee's familial or freedom of association rights to be free from deliberate indifference.  At best, they simply establish freedoms of association and familiar association are protected by the First and/or Fourteenth Amendments.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984) (holding First Amendment freedom of association requires "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State"); *Pickup v. Brown*, 740 F.3d 1208, 1233 (9th Cir. 2013) (quoting *Roberts*, 468 U.S. at 617-18) (recognizing First Amendment freedom of association protects "'intimate human relationships,' which are implicated in personal decisions about marriage,

childbirth, raising children, cohabiting with relatives, and the like"); *Lee v. City of Los Angeles*, 250 F.3d 668, 680 (9th Cir. 2001) ("Plaintiffs have sufficiently alleged violations of their rights under the First and Fourth Amendments, as well as violations of their rights to both due process and familial association under the Fourteenth Amendment.").

More importantly, plaintiffs fail to show any of the rights they invoke were clearly established in "the specific context of [this] case," *Saucier*, 533 U.S. at 201 — that a reasonable official would have understood that Mitchell's actions violated those rights. *Anderson*, 483 U.S. at 640. Even if, for plaintiffs' benefit, the right at issue is stated broadly — the right of a suicidal arrestee to be free from deliberate indifference by being taken to a hospital — plaintiffs' identify no precedent clearly establishing it.[3] To the contrary, *Conn* reasonably could be read to approve of Mitchell's conduct. *Conn* denied qualified immunity and summary judgment to officers who "failed to report [an arrestee's suicide attempt] to jail personnel or take her to a hospital." 591 F.3d at 1090. Mitchell did not so fail; he reported Petrolino's suicidal state to jail personnel. Nowhere does *Conn* require a suicidal arrestee to be taken to a hospital. *See also Gordon v. Kidd*, 971 F.2d 1087, 1095 (4th Cir. 1992) (officer who communicated arrestee's suicidal state to jail personnel not deliberately indifferent). Because plaintiffs cannot show Petrolino had a clearly established right to be hospitalized, as opposed to being jailed under the custody of officials aware of his suicidal state, Mitchell is entitled to qualified immunity on plaintiffs' § 1983 claims.

### B. State-Law Wrongful Death Claim

Mitchell argues he cannot be held liable under plaintiffs' state-law wrongful death claim because he neither owed Petrolino a general duty to prevent his suicide, nor had a special

---

[3] Plaintiffs seem to frame the right at issue as Petrolino's right not to be put "in a situation that was more dangerous than the one in which he was found." Pls.' Opp'n 5 (citing *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013)). Although this proposed right is probably framed "at [too] high [a] level of generality," *al-Kidd*, 563 U.S. at 742, it certainly was not clearly established in the "specific context" of this case, *Saucier*, 533 U.S. at 201. Plaintiffs have pled no facts showing either Mitchell or a reasonable officer in his position would have understood they were violating the right — putting Petrolino in a more dangerous situation than the one in which he was found — by taking him to jail from the Golden Gate Bridge. *Anderson*, 483 U.S. at 640.

relationship with Petrolino imposing such a duty. Mitchell is correct that he was bound by no general duty. "As a rule, one has no duty to come to the aid of another." *Williams v. State of California*, 34 Cal. 3d 18, 23 (1983) (citation omitted). "[P]olice officers . . . , like other persons, generally may not be held liable in damages for failing to take affirmative steps to come to the aid of, or prevent an injury to, another person. As a rule, one has no duty to come to the aid of another." *Zelig v. Cty. of Los Angeles*, 27 Cal. 4th 1112, 1128 (2002).

A closer question is whether Mitchell owed a duty to Petrolino by virtue of a special relationship. *See Williams*, 34 Cal. 3d at 23 ("A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act."). The most relevant authorities, however, support the notion that when an arresting officer is aware an arrestee is at risk of self-harm, a special relationship exists and the arresting officer must take reasonable measures to prevent the arrestee from harming himself. *Lum v. Cty. of San Joaquin* recognized the duty of arresting officers "to act reasonably to protect" an arrestee who had "laceration on his foot, difficulty walking, vomit on his shirt, and was behaving strangely" and whom the officers suspected was "off his meds." 756 F. Supp. 2d 1243, 1246, 1254-55 (E.D. Cal. 2010). The holding in *Lum* relied significantly on the state appellate decision *Giraldo v. California Dep't of Corr. & Rehab.*, which established the much narrower principal that, by virtue of a special relationship, a jailer has a duty to protect an inmate from foreseeable harm inflicted by a third party. *See* 168 Cal. App. 4th 231, 246-53 (2008). Nonetheless, *Giraldo* recognized a broader principle: "It has been observed that a typical setting for the recognition of a special relationship is where 'the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare.'" 168 Cal. App. 4th at 245-46 (quoting *Kockelman v. Segal*, 61 Cal. App. 4th 491, 499 (1998)). That principle clearly covered the situation in *Lum*, and also applies here. Petrolino faced a great risk of injury or death, and could not protect himself. Between arrest and booking, Petrolino was in Mitchell's custody, and Mitchell was the only person in a position to protect him. Indeed, the very reason Mitchell had

been called to respond to Petrolino was because Petrolino was suicidal and at risk of jumping off the Golden Gate Bridge. When Mitchell took Petrolino into custody, a special relationship was formed, and Mitchell assumed a duty to take reasonable measures to protect Petrolino from the known risk of suicide.

Mitchell advances a few unsuccessful arguments against this conclusion. First, he argues a finding of duty ignores the "general rule . . . that a jailer is not liable to a prisoner in his keeping for injuries resulting from the prisoner's own intentional conduct." *Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 349 (Ct. App. 1976). This rule applies when a detainee's suicide was not reasonably foreseeable, *see id.* at 347-50, but not when a defendant is on notice that a detainee presents a risk of harm to himself, *see Lum*, 756 F. Supp. 2d at 1254-55. Next, Mitchell argues *Lum* is distinguishable from his case because the defendants there did not secure treatment for, and irresponsibly released, the decedent. *See* 756 F. Supp. 2d at 1253. These facts, however, speak only to a defendant's *breach* of duty, not the existences of a duty. Mitchell also argues any duty arising from a special relationship must be carefully delineated, and that any such duty was either satisfied (like a duty to warn jail staff of Petrolino's state) or has never been recognized (like a duty to take Petrolino to the hospital). Relevant case law does not indicate a special relationship duty must be defined so narrowly. *See, e.g.*, *Lum*, 756 F. Supp. 2d at 1254 (recognizing a duty "to act reasonably to protect"); *Giraldo*, 168 Cal. App. 4th at 250 (recognizing "a duty of care"). Finally, Mitchell argues he is protected by a statutory immunity provision which plainly does not apply. *See* Cal. Gov't Code § 855.8(a) ("Neither a public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or from failing to prescribe for mental illness or addiction."); *Lum*, 756 F. Supp. 2d at 1258 (denying immunity under section 855.8(a)) ("Here, however, the question deals with the failure to refer decedent for evaluation rather than a failure as a result of diagnosis or treatment. Insofar as defendants are immune from 'failing to diagnose' decedent, they still had a duty to act reasonably to protect him while he was in their custody."). Plaintiffs do not allege Mitchell failed to diagnose or treat Petrolino; they

allege Petrolino acted unreasonably in not taking Petrolino to the hospital for the opportunity to be diagnosed and treated.  Altogether, Mitchell's arguments cannot defeat the conclusion he owed Petrolino a duty of care.  Thus, plaintiffs' wrongful death claim is not subject to dismissal.

### V.  CONCLUSION

For the foregoing reasons, Mitchell's motion is granted in part and denied in part, and plaintiffs' § 1983 claims are dismissed.  Plaintiffs, if they elect to do so, may file an amended complaint.  Any amended complaint must be filed within 21 days of the issuance of this order. **IT IS SO ORDERED**.

Dated: October 24, 2016

_____
RICHARD SEEBORG
United States District Judge